UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| HORTANSIA DONNALEE LOTHRIDGE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:17-CV-89-TLS |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Plaintiff Hortansia Donnalee Lothridge seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for disability insurance benefits and for supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied her disability benefits and supplemental security income and erred by (1) impermissibly drawing inferences about her symptoms based on her failure to obtain regular medical treatment without first considering reasons why she failed to obtain such treatment, and (2) by failing to adequately explain the reasons behind the weight given to various medical evaluations and opinions.

## BACKGROUND

### A.   Procedural Background

On May 20, 2013, the Plaintiff filed her Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, alleging disability beginning on December 14, 2009. (R. 24, ECF No. 19.) Her claims

were denied initially on October 24, 2013, and upon reconsideration on February 20, 2014. (*Id.*) On June 24, 2015, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*) Sharon D. Ringenberg, a vocational expert, also appeared and testified at the hearing. (*Id.*) On September 1, 2015, the ALJ denied the Plaintiff's application, finding she was not disabled prior to her date last insured, December 31, 2014. (R. 24–37.) On January 10, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review. (R. 1–3.)

On March 11, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA from her alleged onset date, December 14, 2009, to her date last insured, December 31, 2014. (R. 24.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including fibromyalgia, obesity, chronic obstructive pulmonary disorder (COPD), asthma, bipolar I disorder, depression, mood disorder, anxiety, posttraumatic stress disorder (PTSD), and attention deficit disorder (ADD). (R. 26.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (R. 27.) The ALJ also found that the Plaintiff had multiple non-severe impairments, including hyperlipidemia, hypertension, history of kidney infection, history of migraines/headaches, allergies, left shoulder disorder, degenerative disc disease of the lumbar spine, vitamin D deficiency, mild mitral and tricuspid regurgitation and mild left atrial enlargement. (*Id.*) As to the Plaintiff's migraines, allergies, left shoulder impairment, degenerative disc disease, vitamin D deficiency, and cardiac dysfunction, the ALJ noted that there was little evidence of significant or ongoing treatment. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do, despite his limitations—to determine whether he can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except:

> She can frequently balance; she can occasionally climb ramps and stairs; she can occasionally stoop, kneel, crouch and crawl; she can never climb ladders, ropes or scaffolds; and she should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. In addition, the claimant can understand, remember and carry out simple instructions; she can make judgments on simple work-related decisions; she can respond appropriately to occasional interactions with supervisors and coworkers, but she should avoid interactions with the general public; she can respond appropriately to usual work situations; and she can deal with changes in a routine work setting.

(R. 29.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled from her alleged onset date to her date last insured. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms. The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 30.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id.*) The Plaintiff testified regarding her level of pain and the functional restrictions on her daily activities. Specifically, the Plaintiff claimed that she had "difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, completing tasks, concentrating, understanding, using her hands, getting along with others and with her memory." (*Id.*) She also testified that she was unable to work because of "breathing problems and due to pain in her hands, shoulders, back, hips and legs." (*Id.*) She further testified that she uses her inhaler daily, "takes medication for fibromyalgia and arthritis," can "stand for five minutes, sit for five to 10 minutes, and lift 10 pounds," "has difficulty being around other people," and "takes medication and sees a counselor

4

weekly for her mental impairments." (*Id.*) However, the ALJ found that "the claimant's medical records showed that the claimant's symptoms have responded well to treatment when she is compliant with her health care providers' recommendations." (R. 31.)

The Plaintiff had past relevant work as a certified nursing assistant, which the vocational expert advised was semiskilled work generally performed at the medium exertional level but performed at the heavy exertional level by the Plaintiff. (R. 36.) Thus, the ALJ concluded that the Plaintiff was not capable of performing any past relevant work. (*Id.*) However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act since her alleged onset date. (R. 37.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ (1) impermissibly drew inferences about the Plaintiff's symptoms and their functional effects based on her failure to seek regular medical treatment without first considering the reasons for such failure, and (2) did not provide adequate reasons for the weight assigned to various medical opinions and evaluations.

### A.   Failure to Seek Medical Treatment

The Plaintiff claims that the ALJ's questioning at the hearing and the ALJ's opinion overemphasize the fact that the Plaintiff did not seek regular medical treatment for all of her impairments or failed to comply with treatment plans. But, the Plaintiff points out that the ALJ failed to ask her why she was non-compliant or failed to seek care. The Commissioner responds that, to the extent the ALJ considered the Plaintiff's non-compliance with medical recommendations and failure to seek medical care, the ALJ was concerned with the conservative nature of the Plaintiff's treatment, which was only one factor relevant to the Plaintiff's credibility.

"Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see also Craft*, 539 F.3d at 679 ("The ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care."). This is so because "[t]here may be a reasonable explanation behind [the plaintiff's] actions, such as she may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects." *Murphy*

*v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). "Good reasons" for failing to obtain treatment "may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects. *Shauger*, 675 F.3d at 696; *see also Frierson v. Colvin*, No. 2:14-CV-170, 2015 WL 5174058, at *6 (N.D. Ind. Sept. 2, 2015) (finding fault where "[t]he ALJ did not ask Plaintiff about his compliance with treatment, and the credibility section of his opinion does not address any reasons for noncompliance, such as inability to afford treatment or the fact that failure to comply with treatment may be a sign of mental disability rather than a reason to discount its severity" (citing *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006)).

In fact, if an ALJ takes into consideration a claimant's failure to seek treatment in a credibility determination, the ALJ is required to inquire as to the reasons for such failure. *See Murphy*, 759 F.3d at 816 (finding fault where "the ALJ did not ask [the plaintiff] why she did not attend all of her physical therapy sessions, or why she did not comply with her home exercise program"); *Epting v. Colvin*, No. 2:14-CV-385, 2016 WL 1237888, at *8 (N.D. Ind. Mar. 29, 2016) ("When considering noncompliance with treatment . . . an ALJ is also required [to] make a determination about whether noncompliance with treatment is justified . . . ."); *Galloway v. Colvin*, No. 2:14-CV-24, 2015 WL 893172, at *5 (N.D. Ind. Mar. 3, 2015) (noting that "[h]ad the ALJ's opinion actually cited this fact as a reason for finding Plaintiff not credible, it would have been an error since he did not explore potential reasons why she wasn't treated that year" (citing *Shauger*, 675 F.3d at 696)); *Pitaroski v. Colvin*, No. 213-CV-00112, 2014 WL 3687234, at *12 (N.D. Ind. July 24, 2014) (remanding because "the ALJ did not make the requisite inquiry to discover the reasons [the plaintiff] either failed to seek treatment . . . or to take his medications as prescribed"). An ALJ may not infer that a claimant "must have felt fine" during gaps in

treatment without asking why the claimant received no treatment during those gaps. *Cole v. Colvin*, 831 F.3d 411, 415 (7th Cir. 2016).

An ALJ also cannot draw a negative inference based on a claimant's failure to obtain adequate treatment, even if she has sought some treatment during the relevant time period. *See Visinaiz v. Berryhill*, 243 F. Supp. 3d 1008, 1014 (N.D. Ind. 2017) (remanding where "the ALJ did not ask Plaintiff about her perceived failure to seek adequate treatment" when the Plaintiff's only treatment was through medication that provided "some benefit"); *Parker v. Colvin*, No. 2:15-CV-316, 2016 WL 4435622, at * 5 (remanding where "[t]he ALJ found Plaintiff less than credible in part because she did not attend as many physical therapy appointments as authorized by her insurance and was not participating in pain management or the types of pain medication the ALJ thought would be appropriate" without "ask[ing] Plaintiff about her physical therapy appointments or pain medication regime[n], and did not credit the pain medications Plaintiff did take").

However, the Court may not overturn the ALJ's credibility determination unless it is "patently wrong." *See Elder*, 529 F.3d at 413–14 (7th Cir. 2007). "An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (*citing Craft*, 539 F.3d at 678). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (*citing Terry*, 580 F.3d at 477); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d

887, 893 (N.D. Ind. 2016). "The determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678.

In this case, the Court is unable to engage in a meaningful review of the ALJ's decision and "cannot assess the validity of the ALJ's credibility determination because the ALJ did not ask important questions to determine if" the Plaintiff's failure to obtain medical care was "justifiable." *Murphy*, 759 F.3d at 816. At the Plaintiff's hearing, the ALJ spent a significant amount of time asking the Plaintiff about the medical care she obtained for her impairments. (R. 52–58.) During this line of questioning, the Plaintiff stated that she had discontinued at least two of her medications because of their side effects (R. 54, 57) and that she was not currently getting treatment for kidney infections, although she had received such treatment in the past (R. 54–55). At one point, the ALJ appears to have interrupted the Plaintiff when she implied that she did not have insurance and had to seek care under her son's insurance. (R. 57.) The ALJ did not follow up on any of this testimony regarding reasons for gaps in the Plaintiff's treatments.

The ALJ's written opinion indicates that the fact that the Plaintiff's medical history did not demonstrate "significant symptoms or treatment" for several of her impairments and that she failed to attend appointments and continue certain medications weighed negatively against the Plaintiff's credibility. (R. 30–33.) For example, in regards to her mental health, the ALJ noted that the Plaintiff failed to attend scheduled appointments in December 2013, August 2014, October 2014, and April 2015. (R. 33.) There is no indication that the ALJ inquired as to why the Plaintiff missed these appointments. The ALJ also noted that the Plaintiff reported that "she had not taken [one of her] medication[s] for a few days" in February 2014, that "she was not taking any medication" in February 2015, and that that "she had not taken medication in approximately

10

three months in March 2015. (R. 33.) However, with the exception of one medication that the ALJ acknowledged was discontinued due to a side effect, the ALJ did not inquire as to why the Plaintiff had ceased taking her other medications. "[F]ailure to comply with treatment may be a sign of mental disability rather than a reason to discount its severity." *Frierson*, 2015 WL 5174058, at *6 (citing *Kangail*, 454 F.3d at 630). The ALJ also found it significant that there was a five-year gap in the Plaintiff's mental health treatment but did not inquire as to the reasons for that gap.

The ALJ also found it significant that the Plaintiff was advised by her health care providers to exercise. (R. 32.) However, the ALJ did not inquire whether she followed this advice or, if not, why she chose not to follow this advice. *See Murphy*, 759 F.3d at 816 (finding fault where "the ALJ did not ask [the plaintiff] why . . . she did not comply with her home exercise program").

Therefore, to the extent that the ALJ's failure to consider the reasons for the Plaintiff's perceived lack of medical treatment affected her credibility, the Court will remand this case.

**B.     Weight Assigned to Medical Opinions**

The Plaintiff takes issue specifically with the weight the ALJ assigned to treating physician James Ehlich, M.D. "A treating physician's medical opinion is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). ALJs are not required to give a treating physician's opinion controlling weight, but in such a case, the ALJ must "provide a sound explanation for his decision to reject" that opinion. *Id.* The Commissioner argues that the ALJ adequately articulated her reasoning for assigning no weight to Dr. Ehlich's

opinion. Specifically, the ALJ found that Dr. Ehlich's opinion was a legal conclusion reserved to the ALJ, that the opinion did not set forth specific functional limitations relevant to the Plaintiff's RFC, and that it was inconsistent with the "relatively benign objective medical finding and lack of significant clinical findings over multiple exams." (R. 35.) Moreover, the ALJ noted that Dr. Ehlich's opinion appeared to be prepared at the Plaintiff's request for a note stating that "she is unable to work for next year." (*Id.*)

The Plaintiff contends that "the record of [Dr. Ehlich] as to [the Plaintiff] appears to be notably deeper than just the visits on record" and "the apparent scope and history [Dr. Ehlich] ha[d] with treating [the Plaintiff] seems to be more substantial than the records provided." (Pl. Br. 9–10, ECF No. 19.) The Plaintiff argues that, had the ALJ contacted Dr. Ehlich in order to retrieve more detailed records, the ALJ could have given the appropriate weight to Dr. Ehlich's opinion. (*Id.*) But, the Plaintiff does not specifically identify what additional evidence was not before the ALJ that the ALJ should have considered. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Smullen v. Colvin*, No. 1:15-CV-187, 2016 WL 4501113, at *6 (N.D. Ind. Aug. 29, 1016) (quoting *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)). Thus, the Plaintiff must "identify[] specific, relevant facts that the ALJ overlooked." *Id. See also Abdul Rahim N. Al-Ramadi v. Colvin*, No. 1:14-CV-327, 2015 WL 7761617, at *6 (N.D. Ind. Dec. 2, 2015) ("Although [the plaintiff] has claimed that he received additional treatment from [the physician], he has not identified any specific facts or medical evidence that the ALJ failed to obtain.") (citing *Nelms*, 553 F.3d at 1098). Because the Plaintiff has only vaguely asserted that there could be more evidence out there, the Court cannot say that the Plaintiff was prejudiced by any omission. *See Nelms*, 553 F.3d at 1098.

12

However, because the Court is remanding on the issue regarding whether the ALJ properly considered the reasons for the Plaintiff's perceived lack of medical treatment, the ALJ should also reconsider whether, in light of those reasons, Dr. Ehlich's opinion is consistent with the remainder of the record.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order.

SO ORDERED on November 29, 2017.

                                s/ Theresa L. Springmann
                                CHIEF JUDGE THERESA L. SPRINGMANN
                                UNITED STATES DISTRICT COURT